|  | |
|---|---|
| Judge: | Hon. Karen A. Overstreet |
| Chapter: | 11 |
| Hearing Date: | December 20, 2013 |
| Hearing time: | 9:30 a.m. |
| Hearing Site: | 700 Stewart St., #7206 |
|  | Seattle, WA 98101 |
| Response Date: | December 13, 2013 |

UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE:<br><br>JACOB BUTTNICK,<br><br>Debtor-in-Possession. | Case No. 13-20151-KAO<br><br>NOTICE OF HEARING ON AND MOTION TO APPOINT A CHAPTER 11 TRUSTEE |

**TO:   ALL CREDITORS LISTED ON THE   MAILING MATRIX**

**PLEASE TAKE NOTICE** that a hearing on the Motion to Appoint a Chapter 11 Trustee will be heard on the 20th day of December, 2013 before Judge Karen A. Overstreet, U.S. Courthouse, 700 Stewart Street, #7206, Seattle, WA 98101 at 9:30 a.m. and the Clerk is requested to note the same for the motion docket on that date

**MOTION**

Creditors Jolan, Inc., by and through attorney Denice Moewes, and Wood & Jones, P.S., and Lance Miyatovich, by and through his counsel, Tom Linde and Schweet Linde & Coulson, PLLC respectfully move this Court for an order directing the appointment of a Chapter 11 Trustee, pursuant to 11 U.S.C. § 1104(a).  This Motion is supported by the facts and authorities contained herein, as well as the Declaration of Denice Moewes and the exhibits attached

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 1

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 1 of 15

thereto, the Declaration of Jason Amala and the exhibits attached thereto and the prior declarations filed in this case.

## I. INTRODUCTION

Creditors Jolan, Inc., and Lance Miyatovich (hereinafter sometimes referred to as "the Jolan Group") hold a judgment ("Judgment") against Jacob Buttnick ("Buttnick" or "Debtor") which resulted from Mr. Buttnick's actions relating to a lease entered into between Jolan, Inc., and Mr. Buttnick for the J&M Café in Pioneer Square, located at 201 and 205 1st Avenue, Seattle, Washington ("J&M Property"). Through their pre and post-judgment dealings with Buttnick, the Jolan Group has become aware of a pattern of fraud, dishonesty including breaching a settlement agreement and concealment of facts from a state court receiver and other parties which render Mr. Buttnick unfit to operate as a debtor-in-possession.

## II. PROCEDURAL STATUS

The first position trust holder on the Property, Whidbey Island Bank, had scheduled a foreclosure of the Property for June 14, 2013. The foreclosure sale was continued to June 21, 2013, to allow Mr. Buttnick the opportunity to try and put a deal together to prevent the foreclosure. As part of his efforts, Mr. Buttnick asked the Jolan Group to accept far less than what was owed on its secured debt. The Jolan Group declined. Mr. Buttnick was unsuccessful in putting a deal together.

On June 20, 2013, Mr. Buttnick executed: (1) an Assignment for the Benefit of Creditors to Aebig & Johnson Business Resolutions LLC ("Aebig & Johnson"); and (2) a Petition For the Appointment of a Receiver Pursuant to RCW 7.080.030(3) & RCW 7.60.025(l)(j). The Petition was filed on June 20, 2013, in King County Superior Court, assigned case number 13-2-23670-2; and an order appointing Aebig & Johnson, as general receiver of all of Mr. Buttnick's property was entered. See Declaration of Sheena Aebig, docket #20.

Prior to the time that Aebig & Johnson was appointed as Receiver, Mr. Buttnick had been working with Shimon and Michelle Shriki ("Shrikis") to put together an insider deal to

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 2

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 2 of 15

purchase the J&M Property. See Declaration of Denice Moewes, Exhibit 8. On September 4, 2013, the Receiver filed a Motion to Approve Sale of Real Property Free and Clear of Liens (Receiver's Motion) to the Shrikis for a price of $1,850,000.00. Moewes Declaration, Exhibit 7. The Receiver's Motion was noted for hearing on October 15, 2013. There were objections to the Receiver's Motion from the Jolan Group, and thereafter the Receiver filed a Motion to Sell Property and Response to Motion for Instructions Re: Sale of Real Property which was noted for hearing on November 14, 2013, and then continued to November 21, 2013. Aebig Declaration. This Chapter 11 proceeding was filed on November 20, 2013.

### III. STATEMENT OF FACTS

#### A. Jolan Inc., J&M Café and Jolan Bankruptcy

Jolan owned and operated the J&M Café and Cardroom in Pioneer Square, at 201 First Avenue, Seattle, Washington from 1995 through January 21, 2009 when it filed a voluntary Chapter 7 petition, 09-10411. Michael McCarty was appointed as the Chapter 7 Trustee.

Among assets of the estate was a potential litigation claim against the landlord of the Property, Jacob, "Jack" Buttnick, relating to the lease for the Property and a breach of contract claim. Also listed on the schedules is a deposit owed to the debtor in the amount of $150,000.00.

On January 6, 2010 the Trustee filed a motion to approve a compromise and assignment of the litigation claim to Lance Miyatovich ("Miyatovich"). Miyatovich would prosecute the claim and the Trustee would receive 20% of any proceeds from the litigation. The order approving the compromise and assignment was entered on April 8, 2010 (docket #145 in case number 09-10411).

On April 23, 2010 a complaint was filed against Mr. Buttnick in King County Superior Court, case number 10-2-15302-1 for breach of contract, tortious interference and unjust

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 3

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 3 of 15

enrichment. See Exhibit "1" to Declaration of Denice Moewes filed simultaneously herewith ("Moewes Declaration").

An amended complaint was filed on May 16, 2011. The complaint was amended after the Jolan Group took the deposition of Mr. Buttnick and discovered that after the lawsuit was commenced Mr. Buttnick fraudulently transferred his ownership interest in the J&M Restaurant LLC, to Otmane Bezzaz. A fraudulent transfer and transferee liability causes of action were added and the J&M Restaurants, LLC named as Defendants. See Declaration of Jason Amala and Moewes Declaration, Exhibit "2".

### B. The August 2012 Settlement Agreement.

On August 2, 2012, the Jolan Group entered into a Settlement Agreement ("Settlement Agreement") with Mr. Buttnick in the King County Superior Court lawsuit that contains an admission by Buttnick that he had engaged in a variety of misconduct and that he was liable for that misconduct, including a prior fraudulent transfer. Moewes Declaration, Exhibit "3". (Miyatovich Declaration at ¶ 2). As part of that Settlement Agreement, the Jolan Group settled their claims against Mr. Buttnick for $510,000.00, subject to a number of express terms and conditions. The Settlement Agreement further provided that the $510,000 was due upon the earlier of the sale of the Property or August 2, 2013. Moewes Declaration, Exhibit 3. (Miyatovich Declaration, Exhibit 5). The Settlement Agreement also provided in pertinent part:

> Buttnick represents that he has sufficient interest in the J&M building to fully fund this settlement agreement, <u>and he agrees he will not encumber the building in an attempt to avoid funding this settlement agreement</u>. Buttnick agrees to take reasonable steps to market, sell, and close on the J&M building for its fair market value, agrees that Jolan and Miyatovich shall be entitled to request reasonable updates on the marketing, sale, and close of the J&M building, and agrees that he and his agents shall provide timely and complete responses to such requests.

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 4

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 4 of 15

The Settlement Agreement further also stated that in the event Mr. Buttnick breached any terms of the Settlement Agreement, the Jolan Group would be entitled to pursue the full value of their claims against him. As noted above, the Settlement Agreement also contains an admission by Buttnick that he had engaged in a variety of acts of misconduct and that he was liable for that misconduct, including a prior fraudulent transfer. Moewes Declaration, Exhibit "3" (Miyatovich Declaration, Exhibit 5, paragraph 1(f)).

A stipulated judgment awarding the Jolan Group $510,000.00 was entered in the King County Superior Court on August 9, 2012, in Cause Number 10-2-15302-1 SEA This judgment was secured by a lien against the J&M Property. Moewes Declaration, Exhibit "3". (Miyatovich Declaration Exhibit 6 and 7).

### C. Mr. Buttnick's Dishonesty Regarding Leases for the J&M Café

In approximately August or September 2012, Mr. Buttnick retained Damon McCartney, a real estate broker in Seattle, Washington, to sell the Property, apparently so he could make the lump sum settlement payment that was due to the Jolan Group in August, 2013. Moewes Declaration, Exhibit "4" (McCartney Declaration, ¶ 3 filed in the receivership action). At the time, Mr. Buttnick had an existing commercial lease with J&M Café Restaurant LLC, owned by Otmane Bezzaz and his wife for the J&M Café[1]. The existing lease was set to expire sometime in the middle of 2014. Moewes Declaration, Exhibit 4 (McCartney Declaration, ¶ 4). Mr. McCartney advised Mr. Buttnick that he should not renew the lease because doing so would negatively impact the value of the Property and the amount that buyers would be willing to pay to purchase the building. Moewes Declaration, Exhibit 4 (McCartney Declaration, ¶ 4).

---

[1] Mr. Buttnick was a 45% owner of the J&M Café Restaurant LLC and Bezzaz owned 55%. One week after the Jolan Group commenced suit against Mr. Buttnick he voluntarily signed a rescission agreement pursuant to which Buttnick transferred to Bezzaz his 45 percent ownership interest and stock in the LLC. This is the fraudulent transfer that Mr. Buttnick admitted to in the Settlement Agreement.

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 5

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

In either later 2012 or early 2013 Mr. Bezzaz and the J&M Café Restaurant LLC stopped making the lease payments. Mr. Buttnick took actions to terminate the lease. On March 18, 2013 Mr. Buttnick entered into a 10-year lease with Jamison and McFarland LLC ("Real Lease"). Schedule B filed by Mr. Buttnick in the receivership, and signed under penalty of perjury states that Mr. Buttnick has a 30% interest in the Jamison and McFarland LLC. Shimon and Michelle Shriki are stated to be the other members of Jamison McFarland, LLC. Moewes Declaration, Exhibit "5".

Entering into the Jamison McFarland lease was a violation of the Settlement Agreement in that it prohibited Mr. Buttnick from encumbering the Property in an attempt to avoid funding the settlement. Entering in to this lease severely negatively impacted the value of the Property for reasons that are extensively set forth in the Declaration of Damon McCartney Moewes Declaration, Exhibit "4".

After the receivership was filed Shimon Shriki provide the Receiver with a copy of a lease which was purported to be the current effective lease with Jamison and McFarland. This lease provided for a lease term of twenty years. Moewes Declaration, Exhibit 8. For the first several weeks of the receivership all parties believe the Backdated Lease was the only lease in existence.

Shortly after the receivership was filed the Jolan Group made a public records request to the Washington State Liquor Control Board for the liquor application that was filed by Jamison and McFarland, LLC. Moewes Declaration, Exhibit "5" (Miyatovich Declaration, Exhibit "C"). The liquor application contained two very surprising facts: 1) the lease attached to the liquor application, ( the "Real Lease") was for a 10 year term, not 20 years; and 2) Mr. Buttnick was a 50% owner of Jamison and McFarland, LLC, not a 30% owner as he stated under penalty of perjury in his Schedule B filed in the receivership proceeding and Michelle Shriki is listed as

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 6

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 6 of 15

having a 50% interest in Jamison and McFarland, but her husband Shimon Shriki has no interest.

Ultimately Mr. Buttnick admitted to the receiver that the lease originally provide to the receiver was executed after the receivership proceeding had commenced and had been backdated (the "Backdated Lease"). Moewes Declaration, Exhibit 8, footnote 2. This means that the Backdated Lease was not only entered into in violation of the receivership stay, but the parties back-dated the document so the parties duplicity would be concealed. Aebig Declaration.

Why was the Backdated Lease provided to the receiver and represented to be the true and only lease? Well obviously the sales price of the Property was going to be drastically reduced if there was, in fact, a lease in place that any new owner would be required to honor for the next 20 years. Mr. Shriki and Mr. Buttnick had made an offer to purchase the property for below market value and the receiver had noted that offer for approval. Mr. Buttnick and Mr. Shriki were doing everything within their power to ensure their offer was the only one made. The chances of Mr. Buttnick and the Shrikis were greatly enhanced if the receiver and all interested parties were relying on the terms contained in the Backdated Lease instead of the Real Lease. Of course, this tactic by Mr. Buttnick also would ensure that his creditors received virtually nothing yet he continued to retain control of the Property.

One other fact must be noted. Despite all of Mr. Buttnick's machinations relating to the ownership of the lease, whether it be Mr. Bezzaz, the J&M Cafe Restaurant LLC, or Jamison and McFarland, LLC the actual J&M restaurant and bar has operated "business as usual" through it all. The bar manager, Mr. Petron continues to run the restaurant and pay the required rent, regardless of the name of the entity the check is being made payable to. Thus while Mr. Buttnick continues to play with the title to the Property, he has been smart enough to

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
Page 7 (206) 623-4382

Case 13-20151-TWD  Doc 25  Filed 11/29/13  Ent. 11/29/13 11:47:21  Pg. 7 of 15

ensure that the actual money making portion of the Property is not impacted and his rent check is delivered to him each and every month like clockwork.

**Mr. Buttnick's Dishonesty Regarding his Assets**

On June 20, 2013 Mr. Buttnick filed his Schedule A – Creditor List and Schedule B – List of Property (RCW 7.60.090) under penalty of perjury. Miyatovich Declaration, Exhibit 11 in the King County receivership case. On Schedule B-2 Personal Property Mr. Buttnick discloses the following:

| | |
|---|---|
| Deposit Account at Bank of America | $13,000.00 |
| Jewelry | $ 5,000.00 |
| 30% Interest in Jamison & McFarland LLC | Unknown |
| Personal clothing | $   100.00 |

Gold in an unknown amount.

Interestingly enough, the liquor license application shows that Mr. Buttnick is a 50% owner of Jamison & McFarland, not 30% as disclosed to the receivership Court under penalty of perjury. Moewes Declaration, Exhibit 5.

Contrast the above with the schedule B of the Debtor's sworn bankruptcy schedules in which he lists a deposit account at Bank of America in the amount of $1,50.00. and clothing in the amount of $800.00. There is no jewelry or gold listed anywhere on the schedules nor are any transfers made within the last year disclosed in the Debtors' Statement of Financial affairs.

### IV.    STATEMENT OF INSSUES

a) Must a trustee be appointed "for cause" under 11 U.S.C. § 1104(1), when the Debtor has engaged in acts of dishonesty, including 1) entering into a lease in violation of the terms of a settlement agreement; 2) entering into the lease post-receivership, in violation of the stay, 3)

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
Page 8 (206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 8 of 15

failing to disclose the existence of the original Lease to the Receiver; 4) back dating documents and 4) refusing to cooperate with the real estate agent in getting the Property sold?

b) Should a trustee be appointed in the "best interests of creditors" under 11 U.S.C. §1104(2) when 1) the debtor has demonstrated untrustworthiness, 2) the Debtor has no monthly income from which to fund a Chapter 11 plan; 3) any Chapter 11 plan would merely be a liquidation plan which can be accomplished more effectively by a trustee; and 3) appointing a trustee is necessary to protect assets of the estate and creditors?

## V. EVIDENCE RELIED UPON

This Motion is based upon the Receiver's Motion to Approve Accounting and Compensation, Clarify Title to Assets, and Grant Relief from Stay with Leave to Close Receivership Proceeding and the declarations filed in support thereof (docket #19), the Declaration of Denice Moewes and the attached exhibits thereto and the Declaration of Jason Amala and the exhibits attached thereto.

## VI. LEGAL AUTHORITY

11 U.S.C. § 1104(a) governs appointment of a trustee in Chapter 11 cases and provides in pertinent part:

[T]he court shall order the appointment of a trustee—

(1) *for cause, including* fraud, *dishonesty*, incompetence, or gross mismanagement of the affairs of the debtor by current management, *either before or after the commencement of the case*, *or similar cause*, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) *if such appointment is in the interests of creditors*, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 9

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 9 of 15

(emphasis added). The Jolan Group is a party in interest under 11 U.S.C. § 1104 and have standing to bring this motion. Here the evidence shows that cause exists to appoint a trustee under both § 1104(a)(1) and (2), because of Mr. Buttnick's continuing pattern of dishonesty, concealment and gross mismanagement.

**Cause Exists to Appoint a Trustee under § 1104(a)(1) because the Debtor has engaged in acts of fraud and dishonesty before the commencement of the case.**

"Cause" under § 1104(a)(1) includes acts of fraud and dishonesty and other similar causes.[2] In making its determination, the court should examine both the pre- and post-petition conduct of the debtor. *Id.* Dishonesty is not defined by the code, but the plain meaning of the word involves a lack of honesty or integrity, and disposition to defraud or deceive.[3] Similar acts include perpetuating falsehoods and untruthfulness.[4]

Entering into a lease, post-receivership, in violation of the automatic stay is an act of dishonesty. Entering into a lease, post-petition, apparently back-dated, and altering the terms of the original lease executed pre-receivership is not only dishonest, it is fraudulent. Failing to even disclose the existence of the pre-receivership lease is fraudulent and dishonest. Entering into the pre-petition lease in violation of the Settlement Agreement is dishonest. Either the bankruptcy schedules or the Schedule B filed in state court are inaccurate. If the State Court proceedings are accurate then Mr. Buttnick has another $11,500 on deposit somewhere, has a supply of gold and has $5,000 worth of jewelry, or he has transferred those assets out and failed to disclose the transfers on his Statement of Financial Affairs.

Mr. Buttnick's actions in the receivership were deplorable and demonstrate that he is not fit to act as a debtor in possession in a fiduciary capacity. Mr. Buttnick, not the lender, but Mr. Buttnick himself filed the petition for the state court receivership. Mr. Buttnick picked his

---

[2] 11 U.S.C. § 1104(a)(1).
[3] Merriam Webster Dictionary, "Dishonesty".
[4] *Id.*

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
Page 10 (206) 623-4382

Case 13-20151-TWD   Doc 25   Filed 11/29/13   Ent. 11/29/13 11:47:21   Pg. 10 of 15

receiver. He came into the receivership with an offer to sell the Property to insiders and subject to a below market lease to an entity in which he was a 50% owner. Despite all these facts, Mr. Buttnick still could not find it in himself to tell the receiver the truth. He provided the receiver with an even more onerous lease that devalued the J&M Property and was entered into post-receivership, with altered terms. Were the post-receivership changes to the lease beneficial to Mr. Buttnick's creditors? No. The post-petition revisions to the lease were beneficial to two parties and two parties only, Mr. Buttnick and his Jamison & McFarland partner, Michelle Shriki. By altering the lease post-receivership, Mr. Buttnick virtually guaranteed that no party would make an offer on the J&M Property thereby ensuring that Mr. Buttnick and the Shriki insiders would get to purchase it for a price substantially below market value.

**Cause Exists to Appoint a Trustee under § 1104(a)(1) because the Debtor has committed gross mismanagement before the commencement of the case.**

Mr. Buttnick had the Property listed for sale. His agent had full price offers. However, Mr. Buttnick was not interested in pursuing negotiations with the prospective buyers and he would not enter into any due diligence with the prospective buyers. What has changed that would now motivate Mr. Buttnick to pursue negotiations with prospective buyers and engage in due diligence? Nothing. Mr. Buttnick has demonstrated that he is not interested in selling this Property. It is the sincere belief of the Jolan Group that if Mr. Buttnick remains as debtor-in-possession the Property will not be listed for sale until this Court forces Mr. Buttnick to do so, and that no offers will be actively pursued. If Mr. Buttnick is in charge of this Chapter 11 proceeding, nothing will happen absent continual motions by creditors to compel actions and for compliance with Court orders.

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 11

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 11 of 15

Under subsection a(1), appointment of a trustee is mandatory when cause is found.[5] Here, there is ample evidence that Mr. Buttnick has committed many acts of dishonesty in his pre-petition conduct. Further, Mr. Buttnick's conduct has demonstrated he is not fit to be a chapter 11 Debtor-in-possession. Therefore, the court must appoint a trustee for cause.

**A Trustee Should be Appointed Under § 1104(a)(2) Because it is in the Best Interests of Creditors.**

Under §1104(b), a court has the discretion to appoint a trustee where doing so would be in the best interests of creditors.[6] Failure to fulfill the duties of a debtor-in-possession warrants appointment of a Trustee as in the best interests of creditors under § 1104(a)(2).[7] Duties of a debtor-in-possession include the duty of honesty and the duty to protect and conserve property in its possession for the benefit of creditors.[8] Most significantly, "The job of a debtor-in-possession remains under the Code as that described by Judge Friendly—to get the creditors paid."[9] Other factors also considered in determining whether to appoint a trustee in the best interests of creditors that are relevant in this case include: 1) the trustworthiness of debtor, 2) the confidence or lack thereof of creditors in the present management, and 3) the benefits derived from appointment of the trustee balanced against the cost of appointment.[10]

In *In re Celeritas Technologies, LLC,* the court appointed a trustee as in the best interests of creditors because the debtor-in-possession failed to fulfill its duties as such.[11] The debtor had produced illegible ledgers, failed to disclose material information regarding improved

---

[5] *In re Plaza de Retiro, Inc.*, 417 B.R. at 640.
[6] 11 U.S.C. §1104(a)(2).
[7] *See, In re Baugh*, 60 B.R. 102, 104 (E.D.Ark. 1986); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) ("When a debtor-in-possession is incapable of performing these duties, a Chapter 11 trustee may be appointed").
[8] *In re Ionosphere Clubs, Inc.*, 113 B.R. at 169.
[9] *In re Pied Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr.S.D.N.Y.1984) (citing *In re Grayson Robinson Stores, Inc. v. Securities and Exchange Commission*, 320 F.2d 940 (2d Cir.1963)).
[10] *In re Ionosphere Clubs, Inc.*, 113 B.R. 164 at 168.
[11] *In re Celeritas Technologies, LLC*, 446 B.R. 514, 521 (Bankr. D. Kan. 2011).

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
Page 12 (206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 12 of 15

finances, and failed to provide candid and accurate information about its profitability.[12] The court found that these acts were a "dereliction of fiduciary duties" and held that "[p]erceived dishonesty or the withholding of information supports the appointment of a trustee."[13] In this present case the Bankruptcy Court Schedule B cannot be reconciled with the State Court Schedule B.   Clearly Mr. Buttnick is not telling the truth to at least one of the two Courts demonstrating his lack trustworthiness, or perhaps both..

The other factors considered in whether to appoint a trustee also weigh in favor of appointment. The Debtor has demonstrated his lack of trustworthiness by altering and back-dating documents and the providing the receiver with such documents with no appropriate disclosures.   Second, because of these constant falsehoods and Mr. Buttnick's failure to assist prospective purchasers with due diligence earlier this year, the Jolan Group has no confidence in Mr. Buttnick's ability to act as debtor-in-possession and "get creditors paid."   Finally, the benefits of appointment greatly outweigh the costs. This is because 1) the existence of a trustee would ensure that *all* of Mr. Buttnick's assets are brought into the estate, without having to rely on Mr. Buttnicks unreliable voluntary disclosure of such assets; and 2) this case involves an individual reorganization, and there is no business to be administered that requires the greater expertise of debtor-in-possession.

The Jolan Group believes the following are benefits that the estate would reap from a Trustee:

1. The Property would be marketed and sold to an independent third party.  The creditors would not have to waste the time and expense trying to figure out whether any proposed sale from Mr. Buttnick was an insider deal pursuant to which he would retain control of the Property (something he has done for the last several years through his shell game of entity ownership).

---

[12] *Id.* at 521.
[13] *Id.* at 520–521.

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 13

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 13 of 15

2. The Trustee would be able to decide in a very short period of time if there is any benefit to the estate of staying in a Chapter 11 and incurring the fees to prepare the monthly reports and paying the quarterly U.S. Trustee fees as opposed to converting the case to a Chapter 7.

3. The Trustee would take appropriate steps to deal with the cash collateral issues. This case has been pending 10 days and so far there has been no motion to use cash collateral filed nor has there been a stipulation between the lenders and debtor noticed out to creditors.

4. A Trustee would review the facts surrounding the Real Lease entered into between the Debtor and Jamison and McFarland and determine whether an adversary proceeding should be filed to avoid the lease as a fraudulent transfer.

5. A trustee would investigate the situation relating to the gold, the money on deposit in Bank of America, and the jewelry disclosed in the receivership Schedule B and not disclosed on Schedule B of the bankruptcy schedules.

It is clear this "reorganization" can only be accomplished by the liquidation of the Property. Mr. Buttnick has no particular expertise which would assist in the liquidation of the Property. He is not operating the J&M Restaurant. A Chapter 11 trustee could liquidate the Property more effectively than Mr. Buttnick, could make a very quick decision as to whether this case should remain in a Chapter 11 or be converted to a Chapter 7.

## VII. CONCLUSION

Mr. Buttnick has tried every maneuver in the book to hold onto the Property. He has demonstrated that he has no interest in selling the Property as he had several full price offers made on the Property which he refused even to respond to. He entered into a new lease in violation of the Settlement Agreement. He back-dated and then provided false documents to the state court receiver. He told the state court that he has substantially more assets than he is disclosing to the Bankruptcy Court.

For the reasons above, the Jolan Group respectfully requests that the court enter an order directing the appointment of a Chapter 11 Trustee.

**OBJECTIONS**

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 14

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 14 of 15

If you do not want the Court to grant the relief requested in the Trustee's Motion, or if you want the Court to consider your view on the Trustee's Motion then on or before Friday, December 13, 2013 you or your attorney must do the following:

File with the Court a written response to the Creditor's Motion explaining your position. The response must be filed at the United States Bankruptcy Court for the Western District of Washington at Seattle, 700 Stewart Street, #6301, Seattle, Washington, 98101, a copy served on the chambers of Judge Karen A. Overstreet, 700 Stewart Street, #7206, Seattle, Washington 98101, and a copy served on the undersigned.

If you mail your response you must mail it early enough so that the Court and the undersigned will receive it on or before the date stated above.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Creditor's Motion and may enter an order granting that relief.

Failure to comply with local rules may be deemed by the Court as a waiver of all objections.

Further information regarding the Motion may be obtained by telephoning Denice Moewes, Wood & Jones, P.S., at (206) 623-4382.

Dated this 29th day of November, 2013.

| | |
|---|---|
| Wood & Jones, P.S. | Schweet Linde & Coulson, PLLC |
| /s/ *Denice E. Moewes* | */s/ Tom Linde* |
| Denice E. Moewes, WSBA#19464 | Tom Linde, WSBA#14426 |
| Attorney for Michael McCarty Chapter 7 Trustee of the Estate of Jolan, Inc., and Lance Miyatovich (the "Jolan Group") | Attorney for Lance Miyatovich |

NOTICE OF HEARING ON
AND MOTION TO APPOINT
CHAPTER 11 TRUSTEE

Page 15

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 13-20151-TWD    Doc 25    Filed 11/29/13    Ent. 11/29/13 11:47:21    Pg. 15 of 15